IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01683-NYW

SHANE C. YOUNGER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This civil action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Acting Commissioner of Social Security's final decision denying the application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by Plaintiff Shane C. Younger ("Plaintiff" or "Mr. Younger").  Pursuant to the Order of Reference dated September 11, 2015 [#42], this civil action was referred to the Magistrate Judge for a decision on the merits pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2.  [#42].  The court has carefully considered the Amended Complaint filed October 11, 2013 [#10], Defendant's Answer filed January 21, 2014 [#24], Plaintiff's Opening Brief filed July 13, 2015 [#37], Defendant's Response Brief filed August 24, 2015 [#40], the entire case file, the administrative record, and applicable case law.  For the following reasons, I respectfully AFFIRM IN PART, and REVERSE AND REMAND IN PART the Commissioner's decision.

# BACKGROUND

## I. Procedural History before the Court

Mr. Younger initiated this action *pro se* on June 26, 2013, by filing a Complaint against "SSDI, SSB," to "appeal social security decision." [#1]. Plaintiff also filed a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, which was granted on July 2, 2013 along with an order that Plaintiff file an amended complaint. [#3, #4]. On August 14, 2013, the court issued a second order directing Plaintiff to file an amended complaint. [#6]. Plaintiff moved for the appointment of counsel, which the court denied, *see* [#8, #9] and filed an Amended Complaint on October 11, 2013. [#10].

On October 29, 2013, Plaintiff indicated his consent to the exercise of jurisdiction by a United States Magistrate Judge [#18], and again moved the court for appointment of counsel. [#19]. The court denied the motion on October 30, 2013. [#20]. On January 21, 2014, Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, filed an Answer [#24] and the Social Security Administrative Record [#25].

On April 10, 2014, the court issued an Order to Show Cause "why this action and Complaint should not be dismissed for failure to prosecute," considering that Plaintiff had failed to file his Opening Brief by the deadline of March 26, 2014. [#28]. Plaintiff did not respond to the Order to Show cause within the prescribed time and the court dismissed the action without prejudice on April 29, 2014. *See* [#30].

On May 2, 2014, Plaintiff moved to reopen the case. *See* [#31]. In an Order dated February 10, 2015, the court granted the motion, reopened the case, and appointed local counsel pursuant to the Court's Civil Pro Bono Pilot Project to represent Plaintiff. [#32]. Attorney

Gregory Stross was selected to represent Plaintiff, *see* [#33]; Mr. Stross entered his appearance on behalf of Plaintiff on April 27, 2015. [#34]. Plaintiff filed an Opening Brief on July 13, 2015 [#37] and Defendant filed a Response Brief on August 24, 2015 [#40]. Plaintiff did not file a Reply Brief. The Parties consented to the exercise of jurisdiction of a magistrate judge on September 4, 2015. [#41].

## II. Events Underlying the Appeal

On February 10, 2010, Mr. Younger filed an application for DIB under Title II of the Act. *See* [#25-2 at 33].[1] On April 22, 2010, Mr. Younger filed an application for SSI under Title XVI of the Act. [*Id.*] Mr. Younger has a high school education, as well as one year of college and four years of electrician apprenticing. He previously worked as a journeyman electrician. [#25-2 at 55]. He alleged in the application that he became disabled on September 15, 2009 as a result of chronic pancreatitis, diabetes, back problems, gout, hypertension, depression, and anxiety. [#25-5 at 2, 6; #25-6 at 11; #25-2 at 55]. Administrative Law Judge Paul Conaway ("ALJ") denied Mr. Younger's application after an administrative hearing held December 16, 2011, at which Plaintiff was represented by counsel. [#25-2 at 33-46].

At the administrative hearing, Plaintiff testified that he had not worked since the alleged date of disability. He testified that he suffers from pancreatitis, has a history of regular consumption of alcohol, and has continued to consume alcohol despite his physicians advising him not to drink, explaining that "[t]he pain becomes so bad that I—in the past, that I just forgot about what I was doing and I drank…I don't think right." *See* [#25-2 at 56-59]. Plaintiff testified that he experiences problems related to pancreatitis "[e]very day, all day, all the time."

---

[1] The court uses this designation to refer to the Electronic Court Filing system ("ECF") document number and the ECF page number of that document. Plaintiff's citations also refer to the ECF document and page number [#37 at 4]; and Defendant cites the page number of the Administrative Record. *See, e.g.,* [#40 at 2].

[*Id.* at 63]. He feels pain in the upper left to the middle side of his stomach through to his back. [*Id.*] To control the pain, he takes up to 600mg of extended release Morphine daily, although he testified that even with the pain medication he experiences pain in the pancreas. [*Id.* at 64]. Plaintiff testified that with the pain, "it's hard to do anything but lay and rest," he has pain in "bending over, tying my shoes, taking a shower, to grab the soap, to dry off, to walk," and that he avoids working and playing sports, even while on Morphine. [*Id.* at 64-65]. He testified that breathing deeply causes him pain and he can walk only the distance of a block and back without stopping to rest. [*Id.* at 65]. He can sit for one hour in the same position before having to lie down and he can stand for "maybe an hour." [*Id.* at 66].

Plaintiff further testified that he has diabetes, which he treats somewhat unsuccessfully with four different types of medicine. [*Id.* at 60]. He loses consciousness weekly due to the diabetes. [*Id.*] Plaintiff testified that he struggles with gout, suffers bouts approximately twice a month, and is affected in his elbows, toes, ankles, knees, fingers, and shoulders. [*Id.* at 61-62]. Plaintiff was experiencing an incidence of gout in his left hand at the time of the administrative hearing.[2] [*Id.* at 61]. He testified that gout prevents the use of whatever joint is afflicted, and "it feels like shards of glass that have been broken and are trying to come out through my skin." [*Id.* at 62]. He cannot pick up containers or write when he experiences gout in his hands and elbows. [*Id.* at 63]. He spends a couple of days recovering from bouts of gout. [*Id.*]

Plaintiff further testified that even when he is not experiencing a flare of pancreatitis or bouts of gout, he is compelled to lie down during the day more than he stands or sits, and he cannot lift more than approximately eight pounds. [#25-2 at 67]. He testified to enduring back pain and shooting pains down the front and back of his legs that abate when he sits. [*Id.* at 69].

---

[2] The ALJ acknowledged that he saw "some swelling of the top portion of the hand…some swelling into the fingers as well." [#25-2 at 61].

Plaintiff struggles with short-term memory problems as a result of the Morphine he ingests, and testified that he cannot remember movies within days of watching them. [*Id.* at 70]. Morphine also makes him sleepy and causes him to want "to lay down a lot because I'm tired all the time and have no energy." [*Id.* at 71]. Finally, Plaintiff testified that he suffers from depression as a result of a divorce and that he struggles to think "of other things," and he has low energy. [*Id.* at 72, 74].

Pat W. Paulini testified as a vocational expert ("VE"). The ALJ explained to Plaintiff's counsel that "I will not ask a question as to the limitations your client testified to because, clearly, if I accept them, he can't do any job full-time...he's laying down the majority of the day, and with the gout and the pancreatitis flares, would miss several days a month at least." [#25-2 at 76]. The ALJ then advised that he would ask questions "based on other information we have in the file." [*Id.*] He questioned whether jobs exist in the United States or local economies that the following hypothetical individual could perform: the age of Plaintiff with Plaintiff's education and work experience, who is limited to lifting or carrying occasionally 20 pounds, frequently 10; who can sit, stand, or walk six out of eight hours a day; who can push or pull without limitation other than the 20 and 10 pound weight limitations; who can climb ramps and stairs but never ladders, ropes, or scaffolds; who can occasionally balance and can frequently stoop, kneel, crouch, and crawl; who should avoid even moderate exposure to hazards; who can follow simple instructions, sustain ordinary routines, and make simple, work-related decisions; who cannot work closely with supervisors, but can accept supervision if the contact is not frequent or prolonged; and who should work primarily "with things rather than interacting with

people."   [#25-2 at 76-77].   The VE testified that such a person could serve as a cleaner, housekeeper, or laundry worker.  [#77].[3]

The ALJ issued his written decision on January 11, 2012, concluding that Mr. Younger was disabled, "but that a substance use disorder is a contributing factor material to the determination of disability," and thus Plaintiff has not been disabled within the meaning of the Act "at any time from the alleged onset date through the date of [the ALJ's] decision."  [#25-2 at 33-34].  Plaintiff subsequently submitted new evidence in the form of hospital reports from the University of Colorado Hospital and Longmont United Hospital, a list of medications and hospital admissions, a letter from his mother, and reports from Robert Drickey, M.D., along with a request for review of the ALJ's decision.  [#25-2 at 7-29].  The Appeals Council determined that the new evidence pertained to a time following the period considered by the ALJ and would not affect the decision about whether Plaintiff was disabled beginning on or before January 11, 2012, and denied Plaintiff's request on May 7, 2013.  [#25-2 at 2-5].  The decision of the ALJ then became the final decision of the Commissioner.  20 C.F.R. § 404.981; *Nielson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted).  Plaintiff filed this action on June 26, 2013.  This court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole.  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).  The court may not reverse

---

[3] The VE testified that a laundry worker is "someone who is putting clothes in the washer, taking it out, putting it in the dryer, taking it out of the dryer, folding, sorting…"  [#25-2 at 78].

an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

### A.     Mr. Younger's Challenge to ALJ's Decision

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act.

42 U.S.C. § 423(a)(1).   Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.   42 U.S.C. § 1382.   An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).   Additionally, the claimant must prove he was disabled prior to his date last insured.   *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.   20 C.F.R. § 404.1520(a)(4)(v).   *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.   Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied.   *Id.*   Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations.   *Id.*; *see also* 20 C.F.R. § 404.1520(e).   If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.   *Williams*, 844 F.2d at 750.   Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful

activity," pursuant to 20 C.F.R. § 404.1520(d).  *Id.*  At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751. The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work.  *See Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) assessing "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).  "The claimant bears the burden of proof through step four of the analysis."  *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then

> consider all relevant facts to determine whether claimant's work capability is
> further diminished in terms of jobs contraindicated by nonexertional limitations.
>
> > …
>
> Nonexertional limitations may include or stem from sensory impairments;
> epilepsy; mental impairments, such as the inability to understand, to carry out and
> remember instructions, and to respond appropriately in a work setting; postural
> and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug
> dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52.  The Commissioner can meet his or her burden by the testimony of

a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir. 1999).

The ALJ first determined that Mr. Younger was insured for disability through December

31, 2014.   [#25-2 at 33, 35].   Next, following the five-step evaluation process, the ALJ

determined that Mr. Younger: (1) had not engaged in substantial gainful activity between the

alleged onset date of September 15, 2000 and his date last insured of December 31, 2014; (2) had

severe impairments of "diabetes mellitus type II, chronic pancreatitis, thoracic and lumbar

degenerative disc disease, alcoholic hepatitis, cirrhosis of the liver, gout, hypertension, chronic

gastritis, esophagitis, major depressive disorder, panic disorder without agoraphobia, and alcohol

abuse"; and (3) considering the impairments both with and without alcohol use, did not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

404.1520(d), 416.920(d)).   [#25-2 at 35-36].   At step four, the ALJ found that Plaintiff had an

RFC to perform less than sedentary work as defined in 20 C.F.R. § 404.1567(a).   The ALJ

specified as follows:

> [H]e is unable to work 8 hours per day, 5 days per week.  The claimant can lift a
> maximum of 8 pounds.  At one time, he can walk 1 block, sit 1 hour, and stand 1
> hour.  The majority of the day, he must lie down.  When the claimant has a
> pancreatitis flare, he is hospitalized and bedridden for several days.  The claimant
> cannot sustain the performance of any work activities on a regular and continuing
> basis, i.e., 8 hours per day, 5 days per week, or an equivalent schedule.  Mentally,

the claimant can follow simple instructions, sustain ordinary routines, and make simple work-related decisions.  He cannot work closely with supervisors, but he can accept supervision if contact is not frequent or prolonged.  He can have limited interpersonal contact, and should primarily work with things rather than interacting with others.

[#25-2 at 37].  The ALJ accepted these as Plaintiff's limits, "with continued alcohol abuse."  [*Id.* at 41].  Finding that Plaintiff was unable to perform any past relevant work, and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, based on all of the impairments, including the substance use disorder," the ALJ determined that "there are no jobs that exist in significant numbers in the national economy that the claimant can perform," and concluded that Plaintiff was "disabled."  [*Id.* at 42].

The ALJ then applied the Contract with America Advancement Act of 1996, Public L. No. 104–121, 110 Stat. 847 (enacted March 29, 1996).  Under this provision, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  *See also* 42 U.S.C. § 1382c(a)(3)(I).  The ALJ considered Plaintiff's limitations and RFC in the absence of substance abuse, and found that Plaintiff would still suffer "more than a minimal impact" on his ability to perform basic work activities and thus "would continue to have a severe impairment or combination of impairments," but those impairments or combination thereof would not meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).  [#25-2 at 42, 43].  The ALJ specified that if Plaintiff "stopped the substance abuse," he would have the RFC to perform a limited range of light work as follows: lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about 6 hours and sit for a total of about 6 hours

during an 8 hour workday with normal breaks; push and pull consistent with the weight limits for lifting and carrying; frequently stoop, kneel, crouch, and crawl; occasionally balance and climb ramps/stairs; never climb ladders, ropes, or scaffolds; avoid even moderate exposure to unprotected heights, dangerous moving machinery, and driving a work vehicle; follow simple instructions, sustain ordinary routines, and make simple work-related decisions; cannot work closely with supervisors but can accept supervision if contact is not frequent or prolonged; sustain limited interpersonal contact, and should primarily work with things rather than people. [*Id.* at 43]. Finding again that Plaintiff was unable to perform any past relevant work, and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ determined that "there would be a significant number of jobs in the national economy that the claimant could perform." [*Id.* at 44-45]. Accordingly, the ALJ concluded that Plaintiff's substance use disorder was a contributing factor "material to the determination of disability," because Plaintiff would not be disabled if he ceased to abuse alcohol. [*Id.* at 45].

First, Mr. Younger asserts that this court should remand the matter for the Commissioner to consider new material evidence concerning his chronic pancreatitis condition. [#37 at 11]. Second, Mr. Younger contends the ALJ failed to apply the correct legal standard in evaluating the weight to be attributed to the treating physician's opinion on his psychological impairment. [*Id.* at 14]. Next, Mr. Younger argues the ALJ improperly evaluated his credibility, resulting in an invalid assessment of his impairment due to pain. [*Id.* at 18]. Finally, Mr. Younger argues the ALJ improperly concluded that the entirety of his testimony and evidence was not credible. [*Id.* at 20].

**B.      Argument Regarding New and Material Evidence**

Mr. Younger contends that he possesses evidence that is new, material, and never submitted for review by his counsel who represented him before the ALJ and Appeals Council, and that this matter should be remanded pursuant to 42 U.S.C. § 405(g).  Sentence six of section 405(g) allows the court to order the Commissioner to review additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (holding, pursuant to 20 C.F.R. § 404.970(b), "that...the Appeals Council [must] consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision.") (internal quotations, citations, and alterations omitted).  Evidence is material and a remand is appropriate "when a reviewing court concludes that 'the [Commissioner's] decision might reasonably have been different had that (new) evidence been before him when his decision was rendered."  *Velasquez v. Astrue*, No. 11–cv–03083–WYD, 2013 WL 1191239, at *9 (D. Colo. Mar. 21, 2013) (citing *Cagle v. Califano,* 638 F.2d 219, 221 (10th Cir. 1981)).

Mr. Younger avers that this matter should be remanded for consideration of two medical reports resulting from a consultation and a clinical summary follow-up by National Jewish Health physician P. Hanna, M.D.  [#37 at 12-13].  Specifically, Dr. Hanna noted during a February 6, 2013 consultation that Plaintiff's diabetes developed as a result of chronic pancreatitis, and found as a possibility that Plaintiff has a familial, inherited form of pancreatitis. [#5 at 48].  During a follow-up visit on March 26, 2013, Dr. Hanna noted that Mr. Younger had been admitted to hospitals on numerous occasions with pain that showed no evidence of acute pancreatitis, and that he is suffering from an atrophic pancreas and chronic pain syndrome.  [#5

at 52].  Plaintiff argues these records are relevant to the issues of potential family origin of his pancreatitis, the severity of chronic pancreatitis and resulting pain as an impairment, misdiagnosis of acute pancreatitis during several hospitalizations, the permanency of the atrophic nature of his pancreas, and the degree to which the severity of his impairments would abate if he ceased consumption of alcohol.  [#37 at 13].  Plaintiff asserts that these records pertain to issues impacting his health that pre-date the ALJ's decision of January 11, 2012; and good cause exists to order the review of these records because Plaintiff enjoyed only limited legal representation in the proceedings before the Appeals Council.  [*Id.* at 14].

Defendant argues that remand is not appropriate here because the records at issue post-date the relevant period by more than one year; the records are not material because they merely reflect Dr. Hanna's interpretation of Plaintiff's medical records, which were considered by the ALJ; and good cause is not satisfied because Plaintiff admits he was represented by counsel up until the date on which the Appeals Council denied his request for review.  [#40 at 20].

The record demonstrates that Mr. Younger saw Dr. Hanna prior to the May 7, 2013 decision of the Appeals Council denying his request for review of the ALJ's decision.  In reaching its decision, the Appeals Council considered additional evidence not presented at the ALJ hearing; this additional evidence did not include the records from Dr. Hanna.  *See* [#25-2 at 2-3].  In declining to consider the additional evidence, the Appeals Council found that the reports were generated by a hospital and a physician in February and March of 2012, that "the new information is about a later time" and post-dates the ALJ's January 11, 2012 decision, and thus "does not affect the decision about whether you were disabled beginning on or before January 11, 2012."  [*Id.* at 3].

14

The reports prepared by Dr. Hanna similarly post-date the ALJ's decision, and under the reasoning of the Appeals Council, would pertain only to whether Plaintiff was disabled after January 11, 2012. *See, e.g., Lately v. Colvin*, 560 F. App'x 751, 753 (10th Cir. 2014) (agreeing that evidence was properly not considered because it post-dated the ALJ's decision). Furthermore, the reports indicate that Dr. Hanna did not have any of Plaintiff's medical records at the February 2013 visit, and that he did not examine Plaintiff at the April 2013 visit but relied instead on his review of Plaintiff's medical records, and that he speculated as to the potential family origin of Plaintiff's pancreatitis based solely on information provided by Plaintiff. *See* [#5 at 48 ("it is possible that [Plaintiff] has an inherited form of pancreatitis in that his paternal uncle had this disease and possibly his paternal grandfather. He did drink moderately heavily prior to the onset of his symptoms on the weekends, however. He has developed type 1 diabetes mellitus as a result of his chronic pancreatitis"); #5 at 52-54]. I agree with Defendant that even if the reports could be deemed relevant to the period considered by the ALJ, they are not material to his decision. At best, Dr. Hanna listened to Plaintiff's rendition of his medical history and reviewed his medical records, which each are sources of information that were before the ALJ and which the ALJ considered.

Finally, I also agree with Defendant that the good cause required by section 405(g) has not been satisfied. Plaintiff contests that he had "limited legal representation" following the ALJ's decision [#37 at 14], but does not elaborate or otherwise explain how his attorney failed to adequately represent him. Accordingly, I decline to remand pursuant to sentence six of 42 U.S.C. § 405(g).

**C.     ALJ's Evaluation of Treating and Examining Physicians' Opinions**

Mr. Younger argues next that the ALJ failed to apply the correct legal standard under 42

C.F.R. § 416.927(c)(2) in evaluating the weight to be given to his treating physician's, Robert

Drickey, M.D., opinion regarding whether Plaintiff has a psychological impairment.  [#37 at 14].

Specifically, Plaintiff avers that the ALJ conflated the standard for evaluating credibility with the

standard for evaluating a medical opinion.  Defendant disagrees.

1.     Applicable Legal Standard

In determining disability for the purposes of SSI and DIB, the opinion of a treating source

is generally entitled to controlling weight so long as it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence in [the] case record."   20 C.F.R. § 416.927(c)(2). *See also* 20 C.F.R. §

404.1527(b), (c); *Pacheco v. Colvin*, 83 F. Supp. 3d 1157, 1161 (D. Colo. 2015).  The ALJ is

required to apply the following factors when he or she declines to give the treating source's

opinion controlling weight:

> (1) the length of the treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; (3) the degree to
> which the physician's opinion is supported by relevant evidence; (4) consistency
> between the opinion and the record as a whole; (5) whether or not the physician is
> a specialist in the area upon which an opinion is rendered; and (6) other factors
> brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) (citing 20 C.F.R.

§ 416.927(c)(2)(i)-(ii), (c)(3)-(c)(6)).  *See also* 20 C.F.R. § 404.1527(c).  In all cases, an ALJ

must "give good reasons in [the] notice of determination or decision" for the weight assigned to a

treating physician's opinion.  20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).  *See*

*also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing Social Security Ruling

96–2p, 1996 WL 374188, at *5; *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003)).  "[I]f

the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so."  *Watkins*, 350 F.3d at 1300 (citations and internal quotation marks omitted).

2.    Application

The ALJ rejected Dr. Drickey's opinion regarding Mr. Younger's mental limitations

based on the following reasons: Dr. Drickey's records did not indicate any psychological testing

or mental health evaluation of Plaintiff; treating records did not reflect the severity of symptoms

as described by Dr. Drickey in his assessment; Dr. Drickey's opinion regarding the mental

impairment was "short and conclusory, with essentially no support for [his] conclusions;" there

was no evidence to support a "marked limit in claimant's functional ability to interact with

others"; Dr. Drickey did not attempt to assess the extent of Plaintiff's mental functional

limitations should Plaintiff's alcohol use cease; and Dr. Drickey opined that Plaintiff had

suffered mental functional limitations for three years, which conflicts with Plaintiff's

demonstrated ability to work as an electrician until the alleged onset date of disability.  [#25-2 at

40].  I find that these specific reasons satisfactorily explain the ALJ's decision to reject the

opinion of Dr. Drickey regarding Plaintiff's mental impairment, and the ALJ's opinion is

"sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the

treating source's medical opinion and the reason for that weight."  *Langley v. Barnhart,* 373 F.3d

1116, 1120 (10th Cir. 2004).

I further find that the ALJ's conclusions are supported by the administrative record.  Dr.

Drickey's records reflect sporadic references to depression on September 30, 2008 and March

22, 2010.  [#25-11 at 22, 52].  Dr. Drickey does not reference depression again until December

14, 2010.  [#25-11 at 120].  At the time of his assessment of Plaintiff's mental impairment, on

September 29, 2010, Dr. Drickey referenced generalized persistent anxiety and mood disturbances, but noted that Plaintiff was not receiving any treatment for depression. [#25-11 at 154-155]. Plaintiff argues in his Opening Brief that the "ALJ's disregarding of the entirety of the treating physician's records, dating back to 2007, was substantially because claimant had made misrepresentations about his use of alcohol to his healthcare treatment providers." [#37 at 16]. I respectfully disagree, and find rather that the ALJ rejected only the portion of Dr. Drickey's opinion regarding whether Plaintiff has a mental impairment and did so on the basis that the available medical records, many of which were drafted by Dr. Drickey, did not reflect the severity of depression or anxiety as described by Dr. Dickey's subsequent assessment.[4]

The ALJ also rejected the opinion of a consultative examiner K. Russell, Ph.D, who concluded in August 2010 that Plaintiff was mentally capable of performing simple, repetitive tasks, but for short periods of time due to his pain, rather than mental health symptoms. [#25-2 at 40-41]. Plaintiff does not challenge the ALJ's treatment of Dr. Russell's report, and I find the ALJ did not err in discounting her opinion. The ALJ observed that Dr. Russell had the benefit of none of Plaintiff's medical records to review, and had relied exclusively on Plaintiff's disability report and representation that he suffered mental stress and depression resulting from physical impairments and inability to see his children and that he suffered constant anxiety with ongoing daily panic attacks. [*Id.*] The ALJ considered instead Dr. Drickey's records from Salud Clinic, which reflected "no more than one June 1, 2010 report of recent panic attacks occurring since a hospitalization, occurring especially at night, with chest pain." [*Id.* at 40]. He further noted that Plaintiff had represented to Dr. Russell that he had not attempted to work since 2008, which was inconsistent with Plaintiff's record of earnings. Ultimately, the ALJ found that Plaintiff was not

---

[4] Indeed, Plaintiff does not challenge the ALJ's treatment of Dr. Drickey's opinions other than with respect to his mental functioning.

credible, which determination is discussed in more detail below, and the "asserted severity of his mental symptoms are not reflected in the medical report." [*Id.* at 41]. Indeed, Dr. Russell's report notes that "the only record available for review was disability from 3368, with information consistent with that, which the claimant provided today." [#25-11 at 834]. And, between December 2009 and July 2011, Dr. Drickey noted only one complaint by Plaintiff of panic attacks. *See* [#25-11 at 17-25, 112-132]. I find that the ALJ's reasons for rejecting Dr. Russell's opinion are specific and sound.

The ALJ accepted the opinion of the state agency reviewing psychologist, MaryAnn Wharry, Psy.D. ("DDS Opinion"), who opined that Plaintiff could "follow simple instructions, sustain ordinary routines and make simple work-related decisions…cannot work closely with supervisors…[can] accept supervision if contact is not frequent or prolonged." [#25-2 at 41; #25-3 at 12, 23].[5] Dr. Wharry examined Plaintiff on August 9, 2010. She noted that Plaintiff has a history of alcohol abuse and was undergoing no current "psych treatment," and that his mood appeared depressed "with sad and slightly anxious affect." [#25-3 at 18]. She further noted that Plaintiff "lives in a house with his mother…does cooking and laundry…does shopping…is able to handle his finances without problems…does cleaning…has friends and spends time with them." [*Id.*] Dr. Wharry relied in part on the medical opinion of Dr. Russell that, "[f]rom a purely mental health perspective, [Plaintiff] appears capable of attending work on a regular basis. He presented as capable of interacting appropriately with co-workers and the public. He may be at risk for having panic attack if under stress when working with a supervisor." [#25-3 at 16]. The ALJ found that the DDS Opinion was most consistent with the overall evidence of the

---

[5] Disability Determination Services ("DDS") physicians and/or psychologists review each claim to determine whether a claimant meets or equals any listing of impairment. These professionals are considered non-examining medical and/or psychological sources who are "highly qualified experts in Social Security disability evaluation." [#25-2 at 36].

record.   [*Id.*]   "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."   Social Security Ruling 96–6p, 1996 WL 374180 at *2 (SSA July 2, 1996).   The opinions of these consultants generally carry less weight than those of treating and examining sources, *see Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004); however, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."   Social Security Ruling 96–6p, 1996 WL 374180 at *3.   *See also Pacheco*, 83 F. Supp. 3d at 1164.   I find that the ALJ did not err in according more weight to the DDS Opinion than to Dr. Drickey or Dr. Russell's opinion regarding Plaintiff's mental impairment.

**D.     ALJ's Assessment of Credibility**

Mr. Younger argues that the ALJ failed to apply the proper legal standard for evaluating his credibility, which resulted in an invalid assessment of his impairment from pain, and the ALJ subsequently and improperly concluded that the entirety of Plaintiff's testimony and evidence was not credible.   [#37 at 18-23].

1.     Applicable Legal Standards

a.     *Assessment of Pain*

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain."   *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (citations omitted).   The ALJ was required to consider all the

relevant objective and subjective evidence and "decide whether he believe[d] the claimant's assertions of severe pain." *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987). "Findings as to credibility should be closely and affirmatively linked to substantial evidence...." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). "Credibility determinations are peculiarly the province of the finder of fact, [however,] and...will not [be] upset...when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990).

In evaluating complaints of pain, consideration is given to: (1) whether the claimant established a pain producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective complaints of pain; and (3) if so, whether considering all the evidence, both objective and subjective, is the claimant's pain in fact disabling. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (quoting *Musgrave*, 966 F.2d at 1375-76). Additionally, in determining whether Plaintiff's subjective complaints of pain are credible, the ALJ should consider various factors, such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (quoting *Branum v. Barnhart,* 385 F.3d 1268, 1273-74 (10th Cir. 2004)).

b.    *Medical Evidence of Substance Abuse or Alcoholism*

Pursuant to 42 U.S.C. § 423(d)(2)(C), "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the

individual is disabled." *See also* 42 U.S.C. § 1382c(a)(3)(J).[6]  "Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." *Drapeau*, 255 F.3d 1211, 1214 (10th Cir. 2001) (citing 20 C.F.R. § 416.935(b)(1)). "Under this regulation, the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether any or all of plaintiff's remaining limitations would be disabling." *Id*.  The drug addiction or alcoholism is considered "a contributing factor material to the determination of disability," if the ALJ determines that the claimant's remaining limitations would not be disabling.  By contrast, the drug addiction or alcoholism is considered to not be a contributing factor material to the determination of disability if the ALJ determines the claimant's remaining limitations are disabling, *i.e.*, the claimant is found disabled independent of his or her drug addiction or alcoholism.  20 C.F.R. § 416.935(b)(2)(i)-(ii).

2.    The ALJ's Determination

Ultimately at issue here is the ALJ's determination that Plaintiff's alcohol abuse "is a material contributing factor" to Plaintiff's medically determinable impairments.  *See* [#25-2 at 44].[7]  The ALJ noted that he must first determine whether there is an underlying medically determinable physical or mental impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques to produce, or could be reasonably expected to produce,

---

[6] Since the ALJ's decision, the agency has issued a Social Security Ruling (SSR) clarifying the Commissioner's policy on evaluating whether a claimant has [drug addiction and alcoholism ("DAA")], if DAA is material, and the claimant's limitations absent that DAA. SSR 13-2p, 2013 WL 621536. The SSR explains that the "key factor" in the DAA analysis is "whether we would still find a claimant disabled if he . . . stopped using drugs or alcohol." *Id*. at *4.

[7] The court notes that Plaintiff does not dispute that his treating records contained medical evidence of substance abuse or alcoholism.

Plaintiff's pain or other symptoms.   [#25-2 at 43].   He then explained that once such an underlying physical or mental impairment has been identified, he must evaluate "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities."   *Id.*   He acknowledged that if statements concerning the intensity, persistence, and functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, he "must make a finding on the credibility of the statements based on a consideration of the entire case record."   *Id.*

The ALJ first accepted Plaintiff's representations regarding his symptoms and limitations subject to continued alcohol abuse, and determined that Plaintiff was disabled "based on his own testimony, which is supported by the September 24, 2010 physical assessments by R. Drickey, MD."   [#25-2 at 40].   *See Drapeau*, 255 F.3d at 1214-15 ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C)"). The ALJ thereafter found that without the effects of substance abuse, Plaintiff would still suffer "more than a minimal impact" on his ability to perform basic work activities and thus "would continue to have a severe impairment or combination of impairments," but those impairments or combination thereof would not meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).   [#25-2 at 42, 43].   With respect to pancreatitis, gout, diabetes, lumbar issues, and depression, the ALJ determined that Plaintiff was not credible in describing his limitations in the absence of alcohol abuse [#25-2 at 41], and declined to accord Plaintiff credence "concerning the intensity, persistence and limiting effects of the limits from his impairments absent substance abuse," based on contradictions in the record regarding Plaintiff's use of alcohol.   [#25-2 at 36-40, 44].

The ALJ considered the following testimony and evidence.  At the December 2011 hearing, Plaintiff represented that he was not currently consuming alcohol, had last consumed alcohol two months earlier, and had consumed alcohol "[m]aybe one other time" in the previous year. [#25-2 at 56-57].  Plaintiff's medical records demonstrate that in July 2010, he presented at an emergency room with abdominal pain, was noted as having a history of alcohol abuse, and reported consuming a liter of alcohol two days prior.  [#25-10 at 23].  In April 2011, he had ingested three glasses of wine prior to a hospital admission. [#25-11 at 136].  In June 2011, Mr. Younger represented to his doctor that he had consumed no alcohol during the previous year; and his doctor noted the inconsistency of the statement with the April 2011 admission record.  [#25-11 at 81-82, 84].  During a September 2011 hospitalization for pneumonia, a nurse discovered Plaintiff in bed with "an empty alcohol flask as well as multiple pills," and noted his state as "significantly somnolent with slurred speech." [#25-12 at 24-25].  Plaintiff "adamantly denied any drug or alcohol use during his hospitalization and became very angry saying it needed to be removed from his record." [*Id.* at 25].  Several days later, Plaintiff returned to the hospital complaining of stomach pain, stating that the pain had begun earlier in the day after drinking wine, and that he had been sober for one year until that day. [*Id.* at 21-22].

The ALJ did not err in taking into account Mr. Younger's misrepresentations regarding his alcohol use in evaluating his overall credibility. *See Wilson*, 602 F.3d at 1146 (affirming that ALJ properly took into account claimant's various discrepancies regarding substance abuse, including misrepresentations as to the use of alcohol and cessation of drug use, when considering claimant's overall credibility). *See also Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1167 (10th Cir. 2012) ("But so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence.

Again, common sense, not technical perfection, is our guide."). Plus, no report in the record independently corroborated Plaintiff's representations that the severity or frequency of his pancreatitis would persist at the same level, should he discontinue his alcohol use.

Furthermore, in assessing credibility, the ALJ considered Mr. Younger's reports of pain and limitations resulting from his diabetes and spinal issues and found inconsistencies in Plaintiff's testimony and the record. For example, Plaintiff represented at the December 2011 hearing that he lost consciousness weekly as a result of his diabetes [#25-2 at 59], but his medical records referenced only one such episode, recorded in November 2010. *See* [#25-2 at 38; #25-11 at 118]. One month earlier, in an October 13, 2010 report, Dr. Drickey noted, without a corresponding test, that Plaintiff's diabetes was uncontrolled, and Plaintiff was sent for training on the use of diabetes medications. [#25-11 at 112, 114, 116]. The ALJ observed that "[s]ubsequent records reflect claimant's diabetes was improved and controlled." [#25-2 at 38; *see also* #25-11 at 120-132].[8]

The ALJ observed that medical imaging of Plaintiff's lumbar spine in September 2009 "evidenced degenerative disc disease, particularly at L4-5 to L5-S1, with mild to moderate stenosis at L5-S1," but that there was no evidence of nerve root compression. [#25-2 at 37; *see* #25-9 at 19-20]. He further observed that Plaintiff's reports of back pain were typically raised "in conjunction with his reports of epigastric pain during hospital ER visits," and that the "treating records are largely negative for objective findings on examination." [#25-2 at 37-38; *see also* #25-11 at 17 ("Musculoskeletal/Extremities: normal," noted on July 3, 2010)]. He determined that Plaintiff's medical records as a whole did not support Plaintiff's claims of severe back pain. [#25-2 at 37-38; *see* #25-10 at 58; #25-11 at 84; #25-12 at 3-4, 15-16 ("Negative

---

[8] The court notes that Steven Larry Peterson, MD reported Plaintiff's diabetes as "poorly controlled" in a report dated June 25, 2011. [#25-11 at 84-84].

for…back pain" on October 9 and November 9, 2011); #25-12 at 24 ("bilateral L5 spondylolysis with moderate L4-L5 and L5-S1 degenerative changes for age," noted on September 19, 2011); #25-12 at 30-31 ("Musculoskeletal: He exhibits no edema," noted on September 14, 2011)].

The ALJ then acknowledged that "[m]edical records clearly reflect significant treatment for abdominal/epigastric pain from pancreatitis beginning September 2008," and that "[a]bdominal CT scans have been positive for various findings that have included a fatty liver, enlarged liver with hepatic stenosis, peripancreatic inflammation consistent with acute pancreatitis, atrophic pancreatitis, and a pancreatic nodule or spenule." [#25-2 at 38]. However, of significance to the ALJ was that treating records also reflected that Plaintiff had typically consumed alcohol "at or just prior to seeking treatment for such pain complaints." [*Id.*; *see also* #25-10 at 92-95, 107-111, 116-121; #25-9 at 10, 30-33, 97; #25-10 at 22, 33-34, 39, 59; #25-11 at 136-139; #25-12 at 20-21, 23]. The ALJ also noted that Plaintiff had admitted during the December 2011 hearing that "every doctor since his pancreatic attacks started have advised him to stop drinking," and that Plaintiff "could not provide any real answer as to why he is still drinking alcohol, stating he is in so much pain he 'forgets' to not drink." [#25-2 at 41; *see also* #25-2 at 57-59].

Consistent with 20 C.F.R. § 404.1529(c)(4), in considering Mr. Younger's statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ properly evaluated whether there were inconsistencies in the evidence and the extent to which there were conflicts between Plaintiff's statements and the rest of the evidence, "including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you." 20 C.F.R. § 404.1529(c)(4). The ALJ also properly considered whether Mr. Younger's description of his functional limitations and symptoms, including pain,

could "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* I find that the ALJ sufficiently linked his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms," associated with his medically determinable impairments to substantial evidence in the record. *See Wilson*, 602 F.3d at 1144 (10th Cir. 2010); SSR 96–7p, 1996 WL 374186, at *1.

However, I find that the ALJ failed to evaluate each of Plaintiff's physical limitations in determining if any would remain should Plaintiff cease consuming alcohol. *See* 20 C.F.R. § 416.935(b)(1). The ALJ identified twelve severe impairments that hindered Plaintiff, but addressed only diabetes, pancreatitis, spinal issues, alcohol abuse, depression, and panic attacks in considering whether he was disabled independent of his alcoholism. *See* [#25-2 at 36]. The ALJ did not address whether the other impairments would remain should Plaintiff discontinue his alcohol use, nor did he address whether the impairments, such as gout, would render Plaintiff disabled in the absence of alcohol use. [#25-2 at 42-43]. *See* 20 C.F.R. § 416.935(b)(2)(ii) ("If…the claimant's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability"). *See also Drapeau*, 255 F.3d at 1215 (remanding in part due to ALJ's failure to "address whether plaintiff's alcohol abuse was a 'contributing factor' to either her post-poliomyelitis or her dysphagia"); *Garver v. Astrue*, No. 09–cv–02259–WYD, 2011 WL 1134721, at *17 (D. Colo. Mar. 28, 2011) ("the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol [or drugs], and then determine whether any or all of plaintiff's remaining limitations would be disabling") (alteration in original) (citation omitted). In considering Plaintiff's RFC if he "stopped the substance abuse," the ALJ noted that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence." [#25-2 at 43]. However, the ALJ did not specifically discuss the impairments other than diabetes, pancreatitis, spinal issues, alcohol abuse, depression, and panic attacks.[9] Indeed, the failure to address gout is significant because Plaintiff testified, and the ALJ acknowledged, that he "gets gout flares at least twice a month all over his body…[d]uring the flare he can't use the affected joint(s) at all for a couple of days." [#25-2 at 41]. As Defendant notes, "[t]o assess the credibility of Plaintiff's subjective complaints, the ALJ had to consider the entire case record and give specific reasons for the weight given to Plaintiff's statements." [#40 at 13 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)]. "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less," *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006), and the Tenth Circuit has held that the failure to consider all of a claimant's impairments is reversible error. *Id.* (citing *Langley v. Barnhart,* 373 F.3d 1116, 1123–24 (10th Cir. 2004)).

Accordingly, I respectfully disagree with Plaintiff that remand to consider the proposed new evidence is appropriate, that the ALJ failed to apply the correct legal standard in evaluating the weight to be attributed to the treating physician's opinion on his psychological impairment, or that the ALJ improperly assessed his credibility. However, I find this matter should be remanded to the Commissioner for further fact finding on the limited issue of which severe limitations would remain, and what effect such limitations would have on Plaintiff's RFC, if

---

[9] The ALJ considered the other impairments in his first assessment of Plaintiff's RFC as follows, "[t]he severe impairments identified above under Finding No. 3 are documented in the medical record, with numerous emergency room (ER) visits and hospital admissions for symptoms and treatment for abdominal and epigastric pain, with diagnoses that include alcohol hepatitis, cirrhosis of the liver, pancreatitis, and gout… [#25-2 at 37].

Plaintiff stopped using alcohol, and whether any of Plaintiff's remaining limitations would be disabling under the Act.

## CONCLUSION

For the reasons set forth herein, the court hereby AFFIRMS IN PART, and REVERSES AND REMANDS IN PART, for further consideration of step 4 to include consideration of Plaintiff's remaining limitations and which of those limitations, if any, would be disabling.

DATED: February 16, 2016                    BY THE COURT:


                                            s/ Nina Y. Wang
                                            United States Magistrate Judge